IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| EDDIE LEE JOHNSON | § | |
| v. | § | CIVIL ACTION NO. 6:09cv248 |
| OFFICER HAMILL, ET AL. | § | |

MEMORANDUM OPINION AND PARTIAL ORDER OF DISMISSAL

The Plaintiff Eddie Johnson, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding pursuant to 28 U.S.C. 636(c).

An evidentiary hearing was conducted on September 3, 2009, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing and in his complaint, Johnson says that on April 11, 2009, Officer Hamill came to his cell and took two pairs of boxer shorts while Johnson was using the toilet. Johnson asked for some grievance forms and Hamill told him to get them when he came out of the cell; Johnson replied that it was his right to get a form when he asked for one. Hamill said that Johnson was wearing two more pairs of boxer shorts, and Johnson said that "this is not about boxers, it's about your trying to humiliate me." Hamill then went over to Johnson's bunk and destroyed some of Johnson's pictures; Johnson says that he believes that Hamill was "drunk or on drugs." Hamill then ordered him to leave the dorm, but Johnson said that he had done nothing wrong. She walked toward him, waving her finger in his face, and would have hit him in the eye but he dodged it.

Johnson stated that Hamill "called a code" on him and a team of officers came to the scene. They took him outside and ordered him to put his hands behind his back, but he already had his

1

hands behind his back. The officers were twisting his arm, and Johnson said that he was not doing anything. The officers turned him around and Officer Crawford pushed him into the picket. They put him on the floor and Officer Crawford punched him while Officer Lamb kneed him in the back. An unidentified lieutenant, whom Johnson said had a Spanish surname, denied him medical care for the injuries which he had suffered.

Johnson says that two other unknown officers were also at the scene. A female officer was the camera operator, and she did not turn the camera on while the use of force was in progress, but only turned it on afterwards. He says that he heard Crawford tell her to turn the camera on while he was being picked up off the floor. An unknown male officer (identified in documents as Jerry Robinson) held his legs while he was being assaulted by Lamb and Crawford. The final defendant named with regard to the use of force is a lieutenant named Johnson, whom the plaintiff says denied him access to medical care after seeing his injuries, and "turned his head to the facts" of the assault.

Next, Johnson says that the nurse whom he saw on April 12, 2009, did not provide adequate medical care for his injured leg. Johnson says that he had a "hole" in his leg, but the nurse told him that she did not have any supplies to clean it. The nurse did not wrap the injury to keep it sanitary and would not give him anything for his back pain. He says that the nurse saw him at his cell, but that she did not even bring an ink pen to write down his vital signs or injuries, instead borrowing Johnson's to do so. He says that he was never seen by a doctor at the Eastham Unit despite requesting to do so.

Finally, Johnson complains that he received three disciplinary cases concerning this incident. The hearings on these cases were presided over by Captain Lampkins, who conspired with the officers involved to cover up what had happened. He says that Lampkins took a forged instrument from Crawford which was signed in Crawford's handwriting for Officer Lamb, and that the allegations charging Johnson with assaulting staff were never proven. He states that the disciplinary cases were falsified and done to cover up the misconduct of the officers involved, and that Lampkins would not allow him to call witnesses who would have proven his innocence.

The Court has received and reviewed prison records concerning this incident. As Johnson says, the video does not begin until after the incident ends. It shows him being picked up and escorted to his cell. At the cell, the lead escorting officer asks him to put his hands out of the cell door so that the handcuffs can be removed, but Johnson refuses, asking for medical care. The officer explains that there are no medical personnel at the Gurney Unit at that time. Johnson continues to insist on seeing medical staff and the officer says that the medical department will be called and that he will get a use of force physical in the morning. Johnson says that he cannot put his arms out of the cell slot because his back hurts too much. Johnson is removed from his cell and stood against the wall while the officer talks to him. The officer tells him to try to put his hands of the slot and Johnson agrees. He is placed back in his cell and is able to put his hands out of the slot; the handcuffs are removed and the use of force video is terminated.

In his statement in the use of force investigation, Johnson says that he asked Hamill for a grievance form, but she refused. He says that Hamill singled him out and took the extra clothing which he had, and she stuck him in the face with her finger and with a TV remote control that she was holding. He says that he was pushed in the back, his arms were twisted while he was being handcuffed, and that once down on the ground, he was punched by one officer and kneed in the back by another.

Officer Hamill's statement says that she took two pairs of boxers from a clothesline hanging across C4-07 bunk. Johnson was coming from the restroom area and "got in her face," demanding his property back. Hamill replied that Johnson was wearing two pairs and that she was taking the two pairs which she had. She states that "Johnson's arms then came up toward her face" and she put her right arm up to shield her face. Johnson then shoved her, striking her on the right forearm. She called for assistance on the radio and went around Johnson trying to exit the dorm. Once she got out of the dorm, she looked back to see if Johnson was following her but he was not. She called to Officer Birdow to call for a supervisor and Birdow replied that "they are on the way." Officers Crawford, Lamb, and Robinson arrived, and she told Crawford what had happened. They went into

the dorm and Johnson was compliant with their orders until Crawford attempted to place cuffs on him, at which time Johnson pulled away and tried to hit Crawford in the head with his fist. The handcuffs fell on the floor and Crawford took hold of Johnson's arms. The officers tried to place Johnson against the wall but he continued to resist, so they put him on the floor. Johnson stopped resisting when the officers put him on the floor, and Crawford called for a video camera. Robinson and Crawford picked Johnson up from the floor, and officers Rankins and Sawyer took over the escort. The video camera arrived and began filming as Johnson was taken off the dorm. Hamill told Crawford that she had been injured when Johnson had hit her on the arm, and Crawford told her to go to the lieutenant's office, where photographs were taken. She went to the Beto Unit for a use of force physical, and the nurse said that Hamill had sustained no injuries. The statements of the other officers involved are generally consistent with that made by Hamill.

In disciplinary case no. 20090213565, Johnson was charged with attempting to assault Officer Crawford. He was found guilty and given 45 days of cell and commissary restrictions, 15 days of solitary confinement, reduction in classification status from Line Class 2 to Line Class 3, and the loss of 90 days of good time credits. In case no. 20090213550, Johnson was charged with attempting to assault Officer Hamill. He was found guilty and given ten hours of extra duty, 45 days of cell and commissary restrictions, 15 days of solitary confinement, reduction in classification status from Line Class 1 to Line Class 2, and the loss of 90 days of good time credits. In case no. 20090215208. Johnson was charged with assaulting Officer Lamb. He was found guilty and sentenced to 15 days of solitary confinement and the loss of 95 days of good time credits. In each of the disciplinary cases, Johnson denied striking or attempting to strike the officers.

Johnson's medical records show that he was seen on April 12, 2009, for a use of force exam. Nurse Linda Havis stated that Johnson reported an injury to the lower lumbar spine and an abrasion of his right lower leg. There was no bruising, bleeding, swelling, or other injury to the back noted, and Johnson was ambulatory without difficulty or apparent distress. She said that he "pressed very deeply" to point out the injured spot without apparent difficulty, but complained of severe discomfort

when the nurse lightly touched the same spot. There was also a two-centimeter abrasion on his lower leg, but the nurse said that this appeared to be older than eight hours and may have been present prior to the use of force.

## Legal Standards and Analysis

The persons directly involved in the use of force were Crawford, Lamb, and Robinson, who is the "unknown officer" who had been holding Johnson's feet. These individuals will be required to answer the lawsuit.

Johnson also sued Linda Hamill, saying that she "started it all." He says that she took away two pairs of boxer shorts, destroyed some personal property, waved her finger in his face, and stood by while the use of force took place.

The confiscation of Johnson's personal property does not set forth a federal cause of action under Section 1983. The doctrine of Parratt v. Taylor, 451 U.S. 527 (1981) (overruled in part on grounds not relevant here) and Hudson v. Palmer, 468 U.S. 517 (1984), known collectively as the *Parratt/Hudson Doctrine*, states that a random and unauthorized deprivation of a property or liberty interest does not violate procedural due process if the State furnishes an adequate post-deprivation remedy. *See* Caine v. Hardy, 943 F.2d 1406, 1412 (5th Cir. 1991). Three predeprivation conditions must exist before the doctrine can be applied. These are: (1) that the deprivation be unpredictable; (2) that predeprivation process be impossible, making any additional safeguard useless; and (3) that the conduct of the state actor be unauthorized. Where these conditions exist, the State cannot be required to do the impossible by providing predeprivation process. Charbonnet v. Lee, 951 F.2d 638, 642 (5th Cir. 1992), *citing* Zinermon v. Burch, 494 U.S. 113 (1990); Myers v. Klevenhagen, 97 F.3d 91, 94-95 (5th Cir. 1996).

Hudson holds that deprivations of property by prison officials, even when intentional, do not violate the Due Process Clause of the Fourteenth Amendment provided that an adequate state post-deprivation remedy exists. Hudson, 468 U.S. at 533. The Texas state administrative and

judicial systems provide an adequate state post-deprivation remedy. Tex. Gov. Code Ann. art. 501.007 (Vernon Supp. 1994); *see also* Murphy v. Collins, 26 F.3d 541, 543-44 (5th Cir. 1994).

In this case, Johnson's pleadings show that Hamill's actions were random and unauthorized deprivations, and so pre-deprivation process was not required. Consequently, the appropriate forum for these claims lies in state court or in the administrative procedures of TDCJ rather than federal court. Simmons v. Poppell, 837 F.2d 1243 (5th Cir. 1987).

Johnson also complains that Hamill's actions were simply meant to harass him, apparently for a racial motivation. Verbal harassment does not set out a ground for a Section 1983 claim. Bender v. Brumley, 1 F.3d 271, 274 n.3 (5th Cir. 1993); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983). To the extent that Johnson seeks to claim a violation of equal protection, through his claim of racial motivation, he has offered no facts in support of this contention, but merely his own assertion that it is so. This is not sufficient to sustain a claim on this basis. *See* Brinkmann v. Johnston, 793 F.2d 111, 113 (5th Cir. 1986) (civil rights claimants must state specific facts, not conclusory allegations). Johnson's claim against Hamill is without merit.

Johnson next sues the video camera operator, saying that she did not turn on the camera until the incident was over. The Fifth Circuit has held that to obtain relief under the Civil Rights Act, 42 U.S.C. §1983, a person must show two elements. These are: (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was done by a person acting under color of state law. Johnson v. Dallas Independent School District, 38 F.3d 198, 199 (5th Cir. 1994). Even assuming that the video camera operator was present during the use of force, as Johnson says, there is no deprivation of a right secured by the Constitution or laws of the United States in the fact that the operator did not turn the camera on so as to record the whole incident. *See* Kiser v. Dearing, slip op. no. 6:08cv272 (E.D.Tex., May 22, 2009) (unpublished) (available on WESTLAW at 2009 WL 1457693) (fact that the camera operator did not start the camera until the incident was over did not implicate a constitutionally protected liberty interest); *accord,* Trevino v. Johnson, civil action no. 9:05cv171 (E.D.Tex., dismissed as frivolous December 8, 2005, no appeal

taken) (dismissing claims against camera operator in use of force claim for failing to set out a constitutional violation). His claim against the camera operator is without merit.

Next, Johnson sues an unknown Hispanic lieutenant, saying that this officer would not call the medical department for him and told him that he would not see the medical department until the next morning. The video shows that this officer advised Johnson that there were no medical personnel at the unit that evening and that he would receive medical care in the morning.

As a general rule, interference with medical assistance by security officers may state a valid claim if the interference amounts to deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976). In this case, Johnson has not shown that the lieutenant was deliberately indifferent to a serious medical need. The officer advised Johnson that there were no medical personnel at the unit, and Johnson has not shown that this was untrue or that there were medical personnel available there to call. Furthermore, the Fifth Circuit has stated that a serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required. Gobert v. Caldwell, 463 F.3d 399, 345 (5th Cir. 2006); *accord*, Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1992) (a medical need is "serious" if it is one which has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention). In this case, Johnson did not have a need that was so obvious that a lay person would recognize the necessity for a doctor's attention; the video shows Johnson walking from the area where the use of force took place to the cell where he was put, a considerable distance, without apparent difficulty. Johnson's claim against this lieutenant is without merit.

Johnson also sues a Lt. Johnson, whom he says came to see him in pre-hearing detention. He says that Johnson would not help him get medical care and was only interested in questioning him about the incident. As above, Johnson has not shown that this lieutenant was deliberately indifferent to a serious medical need, as defined by the Fifth Circuit, and so his claim on this point is without merit.

7

Similarly, Johnson complains that the nurse whom he saw was deliberately indifferent to his serious medical needs. The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997); Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989). However, simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); Norton, 122 F.3d at 293.

Furthermore, malpractice alone is not grounds for a constitutional claim. Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991). Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action. Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993). The Fifth Circuit has held that the fact that medical care given is not the best that money can buy, and the fact that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

More pertinently, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs. Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

In Domino v. TDCJ-ID, 239 F.3d 752 (5th Cir. 2001), a inmate who was a psychiatric patient expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination; the inmate committed suicide two and a half hours later. The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim

8

for deliberate indifference. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Domino, 239 F.3d at 756; *see also* Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In this case, Johnson says that the nurse told him that she did not have anything to wrap his leg and did not give him anything for his back pain. The medical records show that the nurse noted that Johnson was in no apparent distress because of his back and that the injury was an old one and apparently not sustained in the use of force. There are no indications in the medical records that Johnson ever sought, received, or required follow-up medical care for either his back or his leg. He has failed to show that the nurse was deliberately indifferent to his serious medical needs and his claim on this point is without merit.

Johnson goes on to raise several claims regarding the disciplinary cases which he received, including claims that the hearing officer denied him due process and that Officer Crawford offered "forged documents." The prison records show that Johnson lost good time as a result of each of the three disciplinary cases about which he complains, and that he is eligible for release on mandatory supervision.

The Fifth Circuit has held that where a favorable judgment on a mandatory supervision-eligible prisoner's claim would necessarily imply the invalidity of a disciplinary conviction in which good time credits were lost, such claim is not cognizable in a Section 1983 lawsuit until the conviction in the disciplinary proceeding has been expunged, reversed, or set aside. Thomas v. Quarterman, slip op. no. 08-20812 (5th Cir., July 9, 2009) (not selected for publication in the Federal Reporter) (available on WESTLAW at 2009 WL 1971600), *citing* Heck v. Humphrey, 512 U.S. 477, 486-87 (1994); Edwards v. Balisok, 520 U.S. 641, 648 (1997); *and* Clarke v. Stalder, 154 F.3d 186, 189 (5th Cir.1998) (*en banc*). Johnson makes no showing that the disciplinary convictions

9

of which he complains have been reversed, expunged, or otherwise set aside. His claim against Captain Lampkins, and against Officer Crawford for allegedly "forging" the charging instrument in one or more of the cases, must fail for this reason.

Finally, Johnson names the escorting officers as defendants in his lawsuit, as well as the picket officer, Birdow. However, he stated at the evidentiary hearing that he intended to name these persons as witnesses, not defendants, and agreed that they should be dismissed as defendants in the cause. This request should be granted.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, the Plaintiff Eddie Johnson's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted as to his claims regarding the medical care which he received after the incident, including the failure by Lt. Johnson and the unknown Hispanic lieutenant to secure immediate medical care. In addition, his claims regarding the disciplinary cases which he received lack an arguable basis in law because Johnson has made no showing that these cases have been expunged or otherwise set aside. It is accordingly

ORDERED that the Plaintiff's claims against Captain Lampkins, Officer Hamill, the unknown nurse, Lt. Johnson, and the unknown lieutenant be and hereby are DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. These Defendants shall be dismissed as parties to the lawsuit. The dismissal of Johnson's claims that Officer Hamill destroyed his personal property is without prejudice to Johnson's right to pursue these claims through the administrative processes of TDCJ or the courts of the State of Texas. It is further

ORDERED that Officer Birdow and the two unknown escorting officers are hereby DISMISSED as defendants from the lawsuit, without prejudice, on the motion of the Plaintiff at the evidentiary hearing. It is further

ORDERED that the Clerk shall add the name of Jerry Robinson to the docket as a Defendant, as the unknown officer who participated in the use of force, and shall correct the spelling of the name of "Officer Hamel" to "Officer Hamill." Finally, it is

ORDERED that the dismissal of the above claims and defendants being dismissed shall have no effect upon the Plaintiff's claim against officers Crawford, Lamb, and Robinson, for allegedly using excessive force upon him. All other claims and defendants are hereby dismissed; the dismissal of these claims and defendants shall not count as a strike for purposes of 28 U.S.C. §1915(g).

So **ORDERED** and **SIGNED** this **11** day of **September, 2009.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE